1  Gregory L. Weeks, Esq., CSB No. 58584
   Janet Robertson Kaufman, Esq., CSB No. 116143
2  Gregory K. Nelson, Esq., CSB No. 203029
   Chandler G. Weeks, Esq., CSB No. 245503
3  WEEKS, KAUFMAN, NELSON & JOHNSON
   462 Stevens Avenue, Suite 310
4  Solana Beach, CA 92075
   Telephone: (858) 794-2140
5  Facsimile: (858) 794-2141
   Email: office@wknjlaw.com
6
7  Attorneys for Plaintiff

FILED

2008 AUG 11  PM 4:39

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

'08 CV 1457 JAH JMA

8              UNITED STATES DISTRICT COURT

9             SOTHERN DISTRICT OF CALIFORNIA

10 **OAKLEY, INC.**, a Washington          ) Case No.:
11 corporation,                           )
                                          ) COMPLAINT FOR PATENT
12            Plaintiff,                   ) INFRINGEMENT, TRADEMARK
                                          ) INFRINGEMENT, AND UNFAIR
13      vs.                                ) COMPETITION AND FALSE
                                          ) DESIGNATION OF ORIGIN
14 **BIG 5 CORPORATION**, a Delaware       )
   corporation and **STYLE EYES**         ) JURY TRIAL
15 **OPTICS**, a California corporation,   )
                                          )
16            Defendants.                  )
                                          )
17                                         )
                                          )
18 _____  )

19
20        Plaintiff OAKLEY, INC. (hereinafter referred to as "Oakley") hereby

21 complains of Defendants BIG 5 CORPORATION (hereinafter referred to as "Big

22 5") and STYLE EYES OPTICS (hereinafter referred to as "Style Eyes" and

23 collectively referred to as "Defendants") and alleges as follows:

                   **JURISDICTION AND VENUE**
24
25        1.    Jurisdiction over this action is founded upon 15 U.S.C. § 1121, and 28

26 U.S.C. §§ 1331 and 1338.

27        2.    Venue is proper under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. §

28 1400(b). The Defendants sold infringing products in this district, attempted to pass

off infringing products in this district, have directed sales and marketing efforts toward this district and/or own or operate retail stores in this judicial district.

## THE PARTIES

3.    Plaintiff Oakley is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610 and doing business within this judicial district.

4.    Oakley is informed and believes, and thereupon alleges that Defendant Big 5 Corporation is a Delaware corporation doing business at 2525 East El Segundo Blvd, El Segundo, California 90245, and also doing business within this judicial district at multiple retail locations.

5.    Oakley is informed and believes, and thereupon alleges that Defendant Style Eyes Optics is a California corporation doing business at 824 West 18th Street, Costa Mesa, California 92627, and is doing business within this judicial district.

## FACTUAL BACKGROUND

6.    As early as 1985, Oakley has been and continues to be actively engaged in the manufacture and sale of high quality sport sunglasses under various product lines.    Oakley is the manufacturer and retailer of several lines of sunglasses, including its "Canteen"®, "Monster Dog"®, and "Switch" eyeglass lines. These eyeglasses have enjoyed substantial success.

7.    Oakley is the owner by assignment of U.S. Design Patent No. D565,088, duly and lawfully issued on March 25, 2008, describing and claiming the invention entitled "EYEGLASS AND EYEGLASS COMPONENTS," which is embodied by the *Canteen* eyeglass, made and sold by Oakley.  A correct copy of U.S. Design Patent No. D565,088  is attached hereto as Exhibit 1.

8.    Oakley is informed and believes, and thereupon alleges that the Defendant is selling sunglasses that copy the design of the D565,088 patent of Oakley.  The infringing eyeglass bears a "Boarders" tag, which Oakley is informed

and believes is manufactured by Style Eyes. The model is identified as SKU#1443548 5W. The *Canteen* copy sunglass sold by Defendant embodies the subject matter claimed in Oakley's design patent referred to above without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendant Style Eyes manufactures and sells this eyeglass to Big 5 and others. Oakley is informed and believes, and thereupon alleges, that Defendant Big 5 has been and is selling this eyeglass in its retail locations.

9. Oakley is the owner by assignment of U.S. Design Patent No. D496,680, duly and lawfully issued on September 28, 2004, describing and claiming the invention entitled "EYEGLASS FRONT," which is embodied by the *Monster Dog* eyeglass, made and sold by Oakley. A correct copy of U.S. Design Patent No. D496,680 is attached hereto as Exhibit 2.

10. Oakley is the owner by assignment of U.S. Design Patent No. D513,275, duly and lawfully issued on December 22, 2005, describing and claiming the invention entitled "EYEGLASS" which is embodied by the *Monster Dog* eyeglass, made and sold by Oakley. A correct copy of U.S. Design Patent No. D513,275 is attached hereto as Exhibit 3.

11. Oakley is informed and believes, and thereupon alleges that the Defendant is selling sunglasses that copy the design of the D565,088 patent of Oakley. The infringing eyeglass bears a "Boarders" tag, which Oakley is informed and believes is manufactured by Style Eyes. The model is identified as SKU#1443548 5A. The *Monster Dog* copy sunglass sold by Defendant embodies the subject matter claimed in Oakley's design patent referred to above without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendant Style Eyes manufactures and sells this eyeglass to Big 5 and others. Oakley is informed and believes, and thereupon alleges, that Defendant Big 5 has been and is selling this eyeglass in its

retail locations. Oakley is informed that model KFR3624M is also identified by Style Eyes as its Halfmoon-J model.

12. Oakley is the owner by assignment of U.S. Design Patent No. D473,583, duly and lawfully issued on April 22, 2003, describing and claiming the invention entitled "EYEGLASS FRONT" which is embodied by the *Switch* eyeglass, made and sold by Oakley. A correct copy of U.S. Design Patent No. D473,583 is attached hereto as Exhibit 4.

13. Oakley is informed and believes, and thereupon alleges that Defendant Style Eyes, is selling sunglasses that copy the design of Oakley's D473,583 patent. Defendant Style Eyes' copy *Switch* sunglass is sold as its "Fullmoon-J", model number K6556M. The *Switch* copy sunglass sold by Defendant Style Eyes embodies the subject matter claimed in Oakley's design patent referred to above without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendant sold their imitation Oakley sunglass in multiple retail locations.

14. Oakley is the owner by assignment of U.S. Patent No. 5,387,949, duly and lawfully issued on February 7, 1995, describing and claiming the invention entitled "EYEGLASS CONNECTION DEVICE" that protects the described and claimed technology, which is embodied by Oakley's "Zero"®, "Half Jacket"®, and "Flak Jacket"® lines of eyeglasses. A correct copy of U.S. Patent No. 5,387,949 is attached hereto as Exhibit 5.

15. Oakley is informed and believes, and thereupon alleges that Defendant Style Eyes, is selling sunglasses that copy the claimed technology of Oakley's 5,387,949,583 patent. In particular, Oakley alleges that Defendant Style Eyes "Core" and "Pro 33" sunglass models embody the subject matter claimed in Oakley's utility patent referred to above without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon

alleges that Defendant sold their imitation Oakley sunglass in Big 5 retail locations.

16.    Oakley is the exclusive licensee of Fox Racing, Inc. (hereinafter referred to as "Fox") for eyeglasses. Oakley designs, manufactures and sells a line of sunglasses for Fox that bears the "FOX" brand name.    Under the license agreement between Oakley and Fox, Oakley is authorized to enforce the Fox trademarks associated with eyeglasses.

17.    Fox is the owner of federally registered trademark no. 3,160,138.  A true and correct copy of this trademark is attached hereto and incorporated by reference as Exhibit 6.

18.    Fox has been using its trademarks in association with eyeglasses since at least as early as 2005, which use has been continuous through the date of this lawsuit. The Fox trademark registration referred to above is in full force and effect. The trademarks and the good will of the business of Fox and exclusively licensed to Oakley, in connection with which the trademarks have been used and have never been abandoned.    Fox and Oakley continue to preserve and maintain their respective rights with respect to this trademark registration.

19.    The trademark above is inherently distinctive in appearance and has become, through widespread public acceptance, a distinctive designation of the source of origin of goods offered by Fox and sold by Oakley, and has, consequently, acquired secondary meaning in the marketplace and constitute an asset of incalculable value as a symbol of Fox eyewear and its quality goods and good will.

20.    Plaintiff is informed and believes, and based thereon alleges, that Defendants, and each of them, and their agents, employees, and servants have advertised and sold products bearing the trademark "Fox," which advertisements and products are confusingly similar to that of the Oakley's trademarks, and are, therefore, an infringement of the described trademark. Defendants' products are

available at retail and otherwise in similar channels and in competition with Oakley.

21.    Since 2005, Fox and Oakley have expended large sums of money in the promotion of all of its eyeglass line utilizing the Fox logo.  As a result of these promotional efforts, Fox eyewear products have become and are now widely known by the Fox mark and are recognized in this District and elsewhere as emanating from and authorized by Fox.

22.    Fox's eyeglasses and their connection with the Fox mark has become, through widespread public acceptance, a distinctive designation of the source of origin of goods offered by Fox and an asset of incalculable value as a symbol of Fox and its quality goods and good will.

23.    Oakley is informed and believes and thereupon alleges that the Defendants' "Fox" sunglass is designed, manufactured, packaged, advertised, displayed and sold expressly to deceive customers desirous of purchasing products authorized by Fox or to profit from the demand created by Fox and Oakley for distinctive Fox eyewear.

24.    Plaintiff is further informed and believes and thereupon alleges that the presence of Defendants' products in the marketplace damages the value of Oakley's trademark exclusive rights.   The presence of the products in the marketplace is likely to diminish the apparent exclusivity of the genuine Fox products thereby dissuading potential customers who otherwise would have sought Fox products.  Upon information and belief, Oakley alleges that such deception has misled and continues to mislead and confuse many of said purchasers to buy the products sold by Defendants and/or has misled non-purchasers to believe the products emanate from or are authorized by Fox.

25.    Defendants have received written notice of Oakley's proprietary rights in its patents by way of this lawsuit.   Further, Defendants have received constructive notice of Oakley's patents as Oakley caused its patents to be placed

plainly on the product and/or packaging. Despite actual and constructive knowledge, Defendants continue to infringe Oakley's patent rights. On information and belief, such infringement by Defendants must have been willful and wanton.

26. Oakley is informed and believes and thereupon alleges that the sale of the unauthorized, infringing sunglasses has resulted in lost sales, has reduced the business and profit of Oakley, and has greatly injured the general reputation of Oakley due to the inferior quality of the copies, all to Oakley's damage in an amount not yet fully determined.

27. The exact amount of profits realized by Defendant as a result of its infringing activities, are presently unknown to Oakley, as are the exact amount of damages suffered by Oakley as a result of said activities. These profits and damages cannot be accurately ascertained without an accounting.

**FIRST CLAIM FOR RELIEF**
**Patent Infringement**
**(Against Defendants Big 5 and Style Eyes)**

28. The allegations of paragraphs 1 through 27are repled and realleged as though fully set forth herein.

29. This is a claim for patent infringement, and arises under 35 U.S.C. Sections 271 and 281.

30. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

31. Oakley is the owner of U.S. Design Patent No. D565,088, which protects the ornamental design of an eyeglass embodied by Oakley's *Canteen* eyewear. A true and correct copy of U.S. Design Patent No. D565,088 is attached hereto as Exhibit 1. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

32. Defendants Big 5 and Style Eyes, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license,

sunglasses which fall within the scope and claim contained in U.S. Design Patent No. D565,088.

33.    Oakley is informed and believes and thereupon alleges that Defendants willfully infringed upon Oakley's exclusive rights under this patent, with full notice and knowledge thereof.

34.    Oakley is informed and believes and thereupon alleges that Defendants have derived, received and will continue to derive and receive from the aforesaid acts of infringement, gains, profits and advantages in an amount not presently known to Oakley.  By reason of the aforesaid acts of infringement, Oakley has been, and will continue to be, greatly damaged.

35.    Defendants may continue to infringe U.S. Design Patent No. D565,088 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless the Defendant is enjoined by this court.

## SECOND CLAIM FOR RELIEF
### Patent Infringement
### (Against Defendants Big 5 and Style Eyes)

36.    The allegations of paragraphs 1 through 27 are repled and realleged as though fully set forth herein.

37.    This is a claim for patent infringement, and arises under 35 U.S.C. Sections 271 and 281.

38.    Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

39.    Oakley is the owner of U.S. Design Patent No. D496,680, which protects the ornamental design of an eyeglass front embodied by Oakley's *Monster Dog* eyewear.  A true and correct copy of U.S. Design Patent No. D496,680 is attached hereto as Exhibit 2.  By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

40.    Defendants Big 5 and Style Eyes, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license,

sunglasses which fall within the scope and claim contained in U.S. Design Patent No. D496,680.

41. Oakley is informed and believes and thereupon alleges that Defendants willfully infringed upon Oakley's exclusive rights under this patent, with full notice and knowledge thereof.

42. Oakley is informed and believes and thereupon alleges that Defendants have derived, received and will continue to derive and receive from the aforesaid acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of the aforesaid acts of infringement, Oakley has been, and will continue to be, greatly damaged.

43. Defendants may continue to infringe U.S. Design Patent No. D496,680 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless the Defendants are enjoined by this court.

### THIRD CLAIM FOR RELIEF
**Patent Infringement**
**(Against Defendants Big 5 and Style Eyes)**

44. The allegations of paragraphs 1 through 27 are repled and realleged as though fully set forth herein.

45. This is a claim for patent infringement, and arises under 35 U.S.C. Sections 271 and 281.

46. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

47. Oakley is the owner of U.S. Design Patent No. D513,275, which protects the ornamental design of an eyeglass embodied by Oakley's *Monster Dog* eyewear. A true and correct copy of U.S. Design Patent No. D513,275 is attached hereto as Exhibit 3. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

48. Defendants Big 5 and Style Eyes, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license,

sunglasses which fall within the scope and claim contained in U.S. Design Patent No. D513,275.

49. Oakley is informed and believes and thereupon alleges that Defendants willfully infringed upon Oakley's exclusive rights under this patent, with full notice and knowledge thereof.

50. Oakley is informed and believes and thereupon alleges that Defendants have derived, received and will continue to derive and receive from the aforesaid acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of the aforesaid acts of infringement, Oakley has been, and will continue to be, greatly damaged.

51. Defendants may continue to infringe U.S. Design Patent No. D513,275 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless the Defendants are enjoined by this court.

### FOURTH CLAIM FOR RELIEF
### Patent Infringement
### (Against Defendant Style Eyes)

52. The allegations of paragraphs 1 through 27 are repled and realleged as though fully set forth herein.

53. This is a claim for patent infringement, and arises under 35 U.S.C. Sections 271 and 281.

54. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

55. Oakley is the owner of U.S. Design Patent No. D473,583, which protects the ornamental design of an eyeglass embodied by Oakley's *Switch* eyewear. A true and correct copy of U.S. Design Patent No. D473,583 is attached hereto as Exhibit 4. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

… … …

… … …

56.    Defendant Style Eyes, through its agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Design Patent No. D473,583.

57.    Oakley is informed and believes and thereupon alleges that Defendant Style Eyes willfully infringed upon Oakley's exclusive rights under this patent, with full notice and knowledge thereof.

58.    Oakley is informed and believes and thereupon alleges that Defendant Style Eyes has derived, received and will continue to derive and receive from the aforesaid acts of infringement, gains, profits and advantages in an amount not presently known to Oakley.    By reason of the aforesaid acts of infringement, Oakley has been, and will continue to be, greatly damaged.

59.    Defendant Style Eyes may continue to infringe U.S. Design Patent No. D473,583 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless the Defendant is enjoined by this court.

**FIFTH CLAIM FOR RELIEF**
**Patent Infringement**
**(Against Defendant Style Eyes)**

60.    The allegations of paragraphs 1 through 27 are repled and realleged as though fully set forth herein.

61.    This is a claim for patent infringement, and arises under 35 U.S.C. Sections 271 and 281.

62.    Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

63.    Oakley is the owner of U.S. Patent No. 5,387,949, which protects the eyeglass connection device that protects the described and claimed technology for an eyeglass connection device.    A true and correct copy of U.S. Design Patent No. 5,387,949 is attached hereto as Exhibit 5.    By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

64.    Defendant Style Eyes, through its agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. 5,387,949.

65.    Oakley is informed and believes and thereupon alleges that Defendant Style Eyes willfully infringed upon Oakley's exclusive rights under this patent, with full notice and knowledge thereof.

66.    Oakley is informed and believes and thereupon alleges that Defendant Style Eyes has derived, received and will continue to derive and receive from the aforesaid acts of infringement, gains, profits and advantages in an amount not presently known to Oakley.  By reason of the aforesaid acts of infringement, Oakley has been, and will continue to be, greatly damaged.

67.    Defendant Style Eyes may continue to infringe U.S. Design Patent No. 5,387,949 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless the Defendant is enjoined by this court.

## SIXTH CLAIM FOR RELIEF

### Trademark Infringement Under 15 U.S.C. § 1114

### (Against Defendant Style Eyes)

68.    The allegations of paragraphs 1 through 27 are repled and realleged as though fully set forth herein.

69.    This is a claim for trademark infringement, and arises under 15 U.S.C. § 1114 against Defendant Style Eyes.

70.    Jurisdiction is founded upon 15 U.S.C. § 1121.

71.    Fox is the owner of U.S. Registered Trademark No. 3,160,138, which confers on Fox the exclusive right to use this trademark in commerce.  A true and correct copy of U.S. registered Trademark No. 3,160,138 is attached hereto as Exhibit 6. By way of agreement Fox has granted Oakley and exclusive license in this trademark and the exclusive right to make, use, import, offer to sell, or sell eyeglasses bearing the Fox mark.

72.  · The mark has been in use in commerce in connection with the sale of Fox eyewear continuously since at least as early as its respective date of issue. The mark appears clearly on packaging, advertisements, product brochures, and on Fox products.

73.   Defendant, through its agents, employees and servants, have manufactured, imported, advertised, offered for sale, and/or sold products bearing the Fox mark without authority from Fox or Oakley for doing so. Specifically, Defendant is selling a sunglass named "Fox," which Plaintiff believes infringes its rights in the registered trademark.

74.   Plaintiff is informed and believes, and thereupon alleges, that Defendant's use of Oakley's registered trademarks in commerce constitutes trademark infringement, false designation or origin, a false description or representation of goods and wrongfully and falsely represents to the consuming public that the Defendants' advertising and products bearing the Fox trademark originated from or somehow are authorized by Fox.

75.   Plaintiff is informed and believes, and thereupon alleges, that Defendant's unauthorized use of Fox's registered trademark has caused confusion in the marketplace as to the source of origin of Defendant's products and has caused damage to Oakley within this jurisdictional district.

76.  · Plaintiff is informed and believes, and thereupon alleges, that Defendant willfully infringed upon Fox's exclusive rights under its trademark with the intent to trade upon the good will of Fox and to injure Fox and Oakley.

77.   Plaintiff is informed and believes, and thereupon alleges, that Defendant has derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined at the time of trial.

78.   Plaintiff is informed and believes, and thereupon alleges, that Defendant will continue to infringe the registered Fox trademark to the great and

irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless Defendant is enjoined by this court.

79.    Plaintiff has been damaged in this judicial district as a result of the Defendant's infringement of its trademark.

## SEVENTH CLAIM FOR RELIEF
### Unfair Competition and False Designation of Origin
### Under 15 U.S.C. § 1125(a)
### (Against Defendant Style Eyes)

80.    The allegations of paragraphs 1 through 27 and 68 through 79 are repled and realleged as though fully set forth herein.

81.    This is an action for unfair competition, false designation of origin of goods, and false description or representation of goods against Defendants Style Eyes, pursuant to 15 U.S.C. § 1125(a).

82.    Jurisdiction is founded upon 15 U.S.C. § 1121.

83.    Oakley is informed and believes and thereupon alleges that Defendant's use of the brand name "Fox" as a style name constitutes a false designation of origin, a false description or representation of goods, and wrongfully and falsely represents to the consuming public that the Defendant's products originated from or somehow are authorized by Fox. These acts amount to utilizing a false designation of origin and a false description or representation in interstate commerce to compete unfairly with Oakley.

84.    Plaintiff is informed and believes and thereupon alleges that the actions of Defendant were done willfully, knowingly and maliciously with the intent to trade upon the good will of Oakley and to injure Oakley.

85.    The Defendant's acts are in violation of 15 U.S.C. § 1125(a), and will continue to the great and irreparable injury of Oakley unless enjoined by this Court.

... ... ...

WHEREFORE, Plaintiff Oakley, Inc. prays as follows:

1.     That Defendants Big 5 and Style Eyes, jointly and severally, be adjudicated to have infringed Oakley's U.S. Patent Nos. D565,088, D496,680, D513,275, and that the patents are valid and enforceable and are owned by Oakley;

2.     That Defendant Style Eyes be adjudicated to have infringed Oakley's U.S. Patent Nos. D473,583 and 5,387,949, and that the patents are valid and enforceable and are owned by Oakley;

3.     That Defendants Big 5 and Style Eyes, their agents, servants, employees, and attorneys and all persons in active concert and participation with them, be forthwith preliminarily and thereafter permanently enjoined from making, using or selling any sunglass which infringe United States Patent Nos. D565,088, D496,680, D513,275, D473,583 and 5,387,949;

4.     That Defendant Style Eyes be adjudicated to have infringed Registered Trademark No. 3,160,138, and that the trademark is enforceable;

5.     That Defendant Style Eyes and its agents, distributors, partners, retailers, servants, employees, and attorneys and all persons in active concert and participation with them, be enjoined and restrained, during the pendency of this action and permanently thereafter from:

(a) Using Registered Trademark Nos. 3,160,138 or any mark similar thereto in connection with the sale of any goods;

(b) Using the mark "Fox" as a brand or style name;

(c) Committing any acts which may cause purchasers to believe that the Defendant or the products Defendant is selling are sponsored or authorized by, or are in any way associated with Fox or Oakley;

(d) Selling, passing off, or inducing or enabling others to sell or pass off any products as products produced by

Plaintiff, which products are not Plaintiff's or are not produced under the control and supervision and approved by Plaintiff; and

(e) Infringing Plaintiff's trademark rights;

6.    That Defendant Style Eyes, and its respective agents, distributors, customers, retailers, partners, servants, employees and attorneys and all persons in active concert or participation with them, be enjoined and restrained, during the pendency of this action, and permanently thereafter from advertising or selling products in any manner that does or tends to dilute the distinctive value of the Fox mark;

7.    That Defendants Big 5 and Style Eyes be required to account to Oakley for any and all profits derived by them associated with their sale of the accused products, and all damages sustained by Oakley by reason of Defendants' trademark infringement, unfair competition and false designation of origin, together with interest and costs;

8.    For an assessment and award of damages against Defendants Big 5 and Style Eyes in an amount no less than lost profits, reasonable royalty, or Defendants' profits derived from their infringement of Plaintiff's patent rights, pursuant to 35 U.S.C. §§ 284 and 289 and trademark rights pursuant to 15 U.S.C. §§ 1116 and 1117;

9.    For an order requiring Defendants to deliver up and destroy all infringing sunglasses;

10.    That an award of reasonable costs, expenses, and attorney's fees be awarded against Defendants Big 5 and Style Eyes pursuant to 15 U.S.C. § 1116(a), 35 U.S.C. § 285 and 35 U.S.C. § 285; and

11.    That Defendants be directed to file with this court and serve upon Oakley within 30 days after the service of the injunction, a report in writing under

oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

DATED: 8/11/08                    WEEKS, KAUFMAN, NELSON & JOHNSON

_____
Attorney for Plaintiff, Oakley, Inc.
E-Mail: chandlerw@wknjlaw.com

### JURY DEMAND

Plaintiff Oakley, Inc. hereby requests a trial by jury in this matter.

DATED: 8/11/08                    WEEKS, KAUFMAN, NELSON & JOHNSON

_____
Attorney for Plaintiff, Oakley, Inc.
E-mail: chandlerw@wknjlaw.com



(12) **United States Design Patent**    (10) Patent No.: **US D565,088 S**
Baden et al.                            (45) Date of Patent: ** **Mar. 25, 2008**

(54) **EYEGLASS AND EYEGLASS COMPONENTS**

(75) Inventors: **Colin Baden**, Irvine, CA (US); **Hans Karsten Moritz**, Foothill Ranch, CA (US); **Peter Yee**, Irvine, CA (US); **Lek Thixton**, Orcas, WA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/258,507**

(22) Filed: **Apr. 20, 2006**

(51) LOC (8) Cl. ................................................. **16-06**

(52) U.S. Cl. ..................................... **D16/326; D16/335**

(58) **Field of Classification Search** ....... D16/300–330, D16/101, 332–338; D29/109–110; D24/110.2; 351/41, 44, 51–52, 62, 158, 92, 103–111, 351/156, 61, 114–119, 121–123; 2/426–432, 2/447–449, 441, 434–437
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D184,274 S | 1/1959 | Darr |
| D190,884 S | 7/1961 | Rose et al. |
| D192,884 S | 5/1962 | Pettito |
| D198,719 S | 7/1964 | McCulloch |
| D198,939 S | 8/1964 | Huggins |
| D200,734 S | 3/1965 | Zurich |
| D200,735 S | 3/1965 | Mitchell |
| D202,658 S | 10/1965 | Pettito |
| D205,419 S | 8/1966 | Griss |
| 3,476,466 A | 11/1969 | Hopkins |
| D245,090 S | 7/1977 | Zimmermann |
| D362,260 S | 9/1995 | Lin |
| D372,726 S | 8/1996 | Simioni |
| D384,364 S | 9/1997 | Yee |
| 5,760,868 A | 6/1998 | Jannard et al. |
| D423,035 S | 4/2000 | Yee et al. |
| 6,233,342 B1 | 5/2001 | Fernandez |
| D449,641 S | 10/2001 | Arnette |
| D464,669 S | 10/2002 | Thixton et al. |
| D478,929 S | 8/2003 | Baden et al. |
| D484,173 S | 12/2003 | Jannard et al. |

| | | | |
|---|---|---|---|
| D489,394 S | 5/2004 | Teng | |
| D508,515 S | 8/2005 | Yee et al. | |
| D518,847 S | * | 4/2006 | Teng ......................... D16/326 |
| D547,794 S | * | 7/2007 | Jannard et al. ............. D16/326 |
| D552,665 S | * | 10/2007 | Mage ........................ D16/326 |
| D553,176 S | * | 10/2007 | Yee et al. .................. D16/335 |
| D555,187 S | * | 11/2007 | Yee ........................... D16/326 |

OTHER PUBLICATIONS

U.S. Appl. No. 29/227,719, filed Apr. 13, 2005, Jannard, et al., Pending application.
U.S. Appl. No. 29/254,337, filed Feb. 21, 2006, Fox, et al., Pending application.
U.S. Appl. No. 29/225,027, filed Mar. 9, 2005, Baden, et al., Pending application.
U.S. Appl. No. 29/225,018, filed Mar. 10, 2005, Baden, et al., Pending application.
U.S. Appl. No. 29/254,423, filed Dec. 22, 2005, Fox, et al., Pending application.
Berthet-Bondet. *B.B. sol 1968*, Sunglass Catalogue, p. 2, 10.
Optical Journal & Review of Optometry, Nov. 1, 1971, p. 12.
Spy Sunglasses. *Curtis Black Fade*. www.spyoptic.com/the_ products/fashion_sunglasses/index.cfm?ModelName=Fashion/Curtis.

* cited by examiner

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory K. Nelson

(57)                **CLAIM**

The ornamental design for an eyeglass and eyeglass components, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the eyeglass and the eyeglass components of the present invention;

FIG. 2 is a front elevational view thereof;

FIG. 3 is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof;

FIG. 4 is a rear elevational view thereof;

FIG. 5 is a bottom plan view thereof; and,

FIG. 6 is a top plan view thereof.

**1 Claim, 4 Drawing Sheets**



EXHIBIT __1__ PAGE __1__ OF __5__

**U.S. Patent**      **Mar. 25, 2008**    **Sheet 1 of 4**      **US D565,088 S**



*FIG. 1*

EXHIBIT____1____PAGE _2_ OF _5_

**U.S. Patent**     Mar. 25, 2008     Sheet 2 of 4     US D565,088 S



## *FIG. 2*



## *FIG. 3*



## *FIG. 4*

EXHIBIT ___1___ PAGE _3_ OF _5_



*FIG. 5*

EXHIBIT __1__ PAGE __4__ OF __5__

U.S. Patent      Mar. 25, 2008      Sheet 4 of 4      US D565,088 S



## FIG. 6

EXHIBIT __1__ PAGE _5_ OF _5_



US00D496680S1

(12) **United States Design Patent** (10) Patent No.: **US D496,680 S**

Yee (45) **Date of Patent:** ** **Sep. 28, 2004**

(54) **EYEGLASS FRONT**

(75) Inventor: **Peter Yee**, Irvine, CA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/176,220**

(22) Filed: **Feb. 13, 2003**

(51) LOC (7) Cl. .................................................... **16-06**

(52) U.S. Cl. ...................................................... **D16/326**

(58) Field of Search ........................ D16/101, 300–330,
D16/335; D29/109–110; D24/110.2; 351/41,
44, 51, 52, 111, 158; 2/426, 447, 448

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D187,299 S | 2/1960 | Behr |
| D192,884 S | 5/1962 | Petitto |
| D193,028 S | 6/1962 | Petitto |
| D199,150 S | 9/1964 | Carmichael |
| D204,812 S | 5/1966 | Shindler |
| D209,862 S | 1/1968 | McCracken |
| D268,683 S | 4/1983 | Tenny |
| D339,816 S | 9/1993 | Jackson |
| D363,504 S | 10/1995 | Arnette |
| D372,726 S | 8/1996 | Simioni |
| D378,375 S | 3/1997 | Tsai |
| D378,376 S | 3/1997 | Tsai |
| D380,766 S | 7/1997 | Simioni |
| D384,686 S | 10/1997 | Jannard et al. |
| D389,504 S | 1/1998 | Simioni |
| D390,589 S | 2/1998 | Simioni |
| D391,596 S | 3/1998 | Simioni |
| D392,308 S | 3/1998 | Simioni |
| D397,351 S | 8/1998 | Simioni |
| D399,239 S | 10/1998 | Jannard et al. |
| D400,230 S | 10/1998 | Arnette |
| D407,428 S | 3/1999 | Jannard et al. |
| D425,103 S | 5/2000 | Yee et al. |
| D426,258 S | 6/2000 | Jannard et al. |
| D432,157 S | 10/2000 | Simioni et al. |
| D441,390 S | 5/2001 | Jannard et al. |
| D464,669 S | 10/2002 | Thixton et al. |

OTHER PUBLICATIONS

Sunglass Hut catalog, p. 8, 2000.*
"B.B. Sol 1979", pp. 3–4, Berthet–Bondet, Oyonnax Cedex, France.
"b.b. sol 1976", Berthet–Bondet, Oyonnax Cedex, France.
b.b. sol 1975 Berthet–Bondet, Oyonnax Cedex, France.
"B.B. sol", Berthet–Bondet, Oyonnax Cedex, France, 1970.
"B.B. sol 1967", Berthet–Bondet, Oyonnax Cedex, France.
U.S. patent application Ser. No. 29/162,874, Thixton et al., filed Jun. 20, 2002.
U.S. patent application Ser. No. 29/170,955, Thixton et al., filed Nov. 13, 2002.

* cited by examiner

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory K. Nelson

(57) **CLAIM**

The ornamental design for an eyeglass front, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the eyeglass front of the present invention;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof;
FIG. 5 is a top plan view thereof; and,
FIG. 6 is a bottom plan view thereof.
Phantom lining, where utilized, is for illustrative purposes only and is not intended to limit the claimed design to the features shown in phantom.

**1 Claim, 3 Drawing Sheets**



EXHIBIT __2__ PAGE _1_ OF _4_



*FIG. 1*

EXHIBIT ___2___ PAGE ___2___ OF ___4___



**FIG. 2**



**FIG. 3**



**FIG. 4**

EXHIBIT __2__ PAGE _3_ OF _4_

**U.S. Patent**     Sep. 28, 2004     Sheet 3 of 3     US D496,680 S



*FIG. 5*

*FIG. 6*

EXHIBIT __2__ PAGE __4__ OF __4__



US00D513275S

(12) **United States Design Patent**  (10) Patent No.:  **US D513,275 S**
Yee  (45) Date of Patent:  ** **Dec. 27, 2005**

(54) **EYEGLASS**

(75) Inventor: **Peter Yee**, Irvine, CA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/206,156**

(22) Filed: **May 24, 2004**

**Related U.S. Application Data**

(62) Division of application No. 29/176,220, filed on Feb. 13, 2003, now Pat. No. Des. 496,680.

(51) LOC (6) Cl. .................................................. **16-06**
(52) U.S. Cl. .................................... **D16/326**; D16/321
(58) Field of Search .............................. D16/300–330, D16/101, 332–338; D29/109–110; D24/110.2; 351/41, 44, 51–52, 158, 92, 103–111, 130, 61; 2/426–432, 448, 441, 447, 434–437

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D187,299 S | 2/1960 | Behr |
| D192,884 S | 5/1962 | Petitto |
| D193,028 S | 6/1962 | Petitto |
| D199,150 S | 9/1964 | Carmichael |
| D204,812 S | 5/1966 | Shindler |
| D209,862 S | 1/1968 | McCracken |
| D268,683 S | 4/1983 | Tenny |
| D339,816 S | 9/1993 | Jackson |
| D363,504 S | 10/1995 | Arnette |
| D372,726 S | 8/1996 | Simioni |
| D378,375 S | 3/1997 | Tsai |
| D378,376 S | 3/1997 | Tsai |
| D380,766 S | 7/1997 | Simioni |
| D384,686 S | 10/1997 | Jannard et al. |
| D389,504 S | 1/1998 | Simioni |
| D390,589 S | 2/1998 | Simioni |
| D391,596 S | 3/1998 | Simioni |
| D392,308 S | 3/1998 | Simioni |
| D397,351 S | 8/1998 | Simioni |
| D399,239 S | 10/1998 | Jannard et al. |

| | | | |
|---|---|---|---|
| D400,230 S | 10/1998 | Arnette | |
| D407,428 S | 3/1999 | Jannard et al. | |
| D415,188 S | * 10/1999 | Thixton et al. | ............ D16/326 |
| D425,103 S | 5/2000 | Yee et al. | |
| D426,258 S | 6/2000 | Jannard et al. | |
| D432,157 S | 10/2000 | Simioni et al. | |
| D441,390 S | 5/2001 | Jannard et al. | |
| D464,669 S | 10/2002 | Thixton et al. | |

OTHER PUBLICATIONS

"B.B. Sol 1979", pp. 3–4, Berthet–Bondet, Oyonnax Cedex, France.
"b.b. sol 1976", Berthet–Bondet, Oyonnax Cedex, France.
b.b. sol 1975 Berthet–Bondet, Oyonnax Cedex, France.
"B.B. sol", Berthet–Bondt, Oyonnax Cedex, France, 1970.
"B.B. sol 1967", Berthet–Bondet, Oyonnax Cedex, France.
Sunglass Hut catalog, p. 8, 2000.
Pending U.S. Appl. No. 29/162,874, Thixton et al., filed Jun. 20, 2002.
Pending U.S. Appl. No. 29/170,955, Thixton et al., filed Nov. 13, 2002.

* cited by examiner

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory K. Nelson

(57) **CLAIM**

The ornamental design for an eyeglass, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the eyeglass of the present invention;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof;
FIG. 5 is a top elevational view thereof; and,
FIG. 6 is a bottom plan view thereof.
Phantom lining, where utilized, is for illustrative purposes only and is not intended to limit the claimed design to the features shown in phantom.

**1 Claim, 4 Drawing Sheets**



EXHIBIT __3__ PAGE __1__ OF __5__

**U.S. Patent**        Dec. 27, 2005        Sheet 1 of 4        US D513,275 S



## FIG. 1

EXHIBIT ___3___ PAGE _2_ OF _5_

**U.S. Patent**     Dec. 27, 2005     Sheet 2 of 4     US D513,275 S



**FIG. 2**



**FIG. 3**



**FIG. 4**

EXHIBIT ___3___ PAGE _3_ OF _5_

Case 3:08-cv-01457-JAH-JMA    Document 1    Filed 08/14/2008    Page 30 of 47



*FIG. 5*

EXHIBIT __3__ PAGE __4__ OF __5__

**U.S. Patent**     Dec. 27, 2005     Sheet 4 of 4     US D513,275 S



*FIG. 6*

EXHIBIT __3__ PAGE __5__ OF __5__

US00D473583S

(12) **United States Design Patent** (10) Patent No.: **US D473,583 S**

Thixton et al.           (45) **Date of Patent:**    ** **Apr. 22, 2003**

---

(54) **EYEGLASS FRONT**

(75) Inventors: **Lek Thixton,** Eastsound, WA (US);
**Colin Baden,** Irvine, CA (US); **James
H. Jannard,** Spieden Island, WA (US)

(73) Assignee: **Oakley, Inc.,** Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/162,874**

(22) Filed: **Jun. 20, 2002**

**Related U.S. Application Data**

(62) Division of application No. 29/154,706, filed on Jan. 28, 2002.

(51) **LOC (7) Cl.** .................................................. **16-06**
(52) **U.S. Cl.** ................................................. **D16/326**
(58) **Field of Search** ...................... D16/101, 300–330;
D29/109, 110; 351/41, 44, 51, 52, 158,
90; 2/447, 448

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D198,719 S | 7/1964 | McCulloch |
| 3,684,356 A | 8/1972 | Bates |
| D383,149 S | 9/1997 | Simioni |
| 5,708,489 A | 1/1998 | Jannard |
| D392,662 S | 3/1998 | Jannard et al. |
| D397,350 S | 8/1998 | Jannard et al. |
| D397,351 S | 8/1998 | Simioni |
| D398,326 S | 9/1998 | Jannard et al. |
| D400,230 S | 10/1998 | Arnette |
| D404,754 S | 1/1999 | Yee et al. |
| D407,099 S | 3/1999 | Wang |
| D407,428 S | 3/1999 | Jannard et al. |
| D408,049 S | 4/1999 | Jannard et al. |
| D410,484 S | 6/1999 | Jannard et al. |
| D410,485 S | 6/1999 | Jannard et al. |
| D415,188 S | 10/1999 | Thixton et al. |
| D422,298 S | 4/2000 | Jannard et al. |
| D423,548 S | 4/2000 | Yee et al. |

| | | |
|---|---|---|
| D425,103 S | 5/2000 | Yee et al. |
| D446,803 S | 8/2001 | Jannard et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| GB | 1184347 | 2/1968 |

OTHER PUBLICATIONS

B.B. Sol—Les lunettes/sonr equipees de verres SOVIREL (1971).
B.B. Sol—Lunetes de Soleil (1986).
Berther–Bonder (1995).
U.S. pending patent application Ser. No. 29/134,462, Jannard, et al. filed Dec. 20, 2000.
U.S. pending patent application Ser. No. 29/142,084, Moritz filed May 16, 2001.
U.S. pending patent application Ser. No. 29/142,308, Jannard, et al. filed May. 23, 2001.
U.S. pending patent application Ser. No. 29/146,178, Yee, et al. filed Aug. 3, 2001.
U.S. co-pending patent application Ser. No. 29/154,706, Thixton et al. filed Jan. 28, 2002.

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory K. Nelson

(57) **CLAIM**

The ornamental design for an eyeglass front, as shown and described.

**DESCRIPTION**

FIG. **1** is a front perspective view of the eyeglass of the present invention;
FIG. **2** is a rear elevational view;
FIG. **3** is a front elevational view thereof;
FIG. **4** is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof;
FIG. **5** is a top plan view thereof; and,
FIG. **6** is a bottom plan view thereof.
Phantom lining, where utilized, is for illustrative purposes only and is not intended to limit the claimed design to the features shown in phantom.

**1 Claim, 3 Drawing Sheets**



EXHIBIT _4_ PAGE _1_ OF _4_

**U.S. Patent**        Apr. 22, 2003        Sheet 1 of 3        US D473,583 S



*FIG. 1*

EXHIBIT __4__ PAGE _2_ OF _4_



*FIG. 2*



*FIG. 3*



*FIG. 4*

EXHIBIT __4__ PAGE __3__ OF __4__



FIG. 5



FIG. 6

EXHIBIT __4__ PAGE __4__ OF __4__



US005387949A

# United States Patent [19]

Tackles

[11] Patent Number: **5,387,949**

[45] Date of Patent: **Feb. 7, 1995**

[54] **EYEGLASS CONNECTION DEVICE**

[75] Inventor: **George Tackles, Lake Elsinore, Calif.**

[73] Assignee: **Oakley, Inc., Irvine, Calif.**

[21] Appl. No.: **825,476**

[22] Filed: **Jan. 29, 1992**

[51] Int. Cl.6 ............................................. G02C 5/14
[52] U.S. Cl. ...................................... 351/121; 351/44;
351/110; 351/140
[58] Field of Search ............... 351/121, 110, 111, 140,
351/41, 158, 153, 141, 142, 149, 44

[56]          **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| Re. 17,994 | 3/1931 | Emons . |
| D. 150,924 | 9/1948 | Bright . |
| D. 182,459 | 4/1958 | Eisler . |
| D. 187,394 | 3/1960 | Moeller . |
| D. 293,450 | 12/1987 | Jannard . |
| D. 324,394 | 3/1992 | Jannard . |
| D. 331,587 | 12/1992 | Jannard et al. . |
| 916,109 | 3/1909 | Cook . |
| 946,596 | 1/1910 | Cook . |
| 1,987,702 | 1/1935 | Nerney .............................. 351/110 |
| 2,192,092 | 2/1940 | Miller, Jr. . |
| 2,362,725 | 11/1944 | Slotsky .............................. 351/140 |
| 2,397,243 | 3/1946 | Cooper, Jr. . |
| 2,482,664 | 9/1949 | Gagnon . |
| 2,534,655 | 12/1950 | Baratelli . |
| 2,571,704 | 10/1951 | Gilden ............................... 351/140 |
| 2,607,919 | 8/1952 | Stegeman . |
| 2,770,806 | 11/1956 | Moeller . |
| 2,825,267 | 3/1958 | Gagnon ............................. 351/110 |
| 3,066,573 | 12/1962 | Moeller . |
| 3,156,756 | 11/1964 | Seaver . |
| 3,233,249 | 2/1966 | Baratelli et al. . |
| 3,517,393 | 6/1970 | Beauchef . |
| 3,756,704 | 9/1973 | Marks . |
| 3,838,914 | 10/1974 | Fernandez . |
| 4,523,819 | 6/1985 | Dianitsch et al. . |
| 4,674,851 | 6/1987 | Jannard . |
| 4,730,915 | 3/1988 | Jannard . |
| 4,824,233 | 4/1989 | Jannard . |
| 4,951,322 | 8/1990 | Lin . |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 3413827 | 8/1985 | Germany . |
| 62-2093 | 12/1983 | Japan . |
| 61-41069 | 1/1986 | Japan . |

*Primary Examiner*—William L. Sikes
*Assistant Examiner*—Hung Xuan Dang
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear

[57]          **ABSTRACT**

Disclosed is a connector for use in connecting a lens to an earstem, comprising a main body which contains a hinge end and a lens receiving end. The connector contains a channel for receiving a portion of the lens. The pivot end of the channel contains a recess whereas the locking end of the channel contains a projection. The hinge end of the connector is attached to the earstem by a releasable pin connection. The lens is connected to the connector by inserting a lens into the channel where the lens is pivoted at the pivot end and then the connector is snapped down to cover over the top edge of the lens. Variations, component parts, and a wire frame dual lens detachable component system are also disclosed.

**18 Claims, 3 Drawing Sheets**



EXHIBIT _5_ PAGE _1_ OF _9_

**U.S. Patent**        Feb. 7, 1995        Sheet 1 of 3        **5,387,949**



FIG. I



FIG. 4

EXHIBIT __5__ PAGE __2__ OF __9__

**U.S. Patent**        Feb. 7, 1995        Sheet 2 of 3        **5,387,949**



FIG.2

FIG. 3

EXHIBIT ___5___ PAGE ___3___ OF ___9___

**U.S. Patent**          Feb. 7, 1995          Sheet 3 of 3          5,387,949



FIG. 5



FIG. 6



FIG. 7

EXHIBIT __5__ PAGE __4__ OF __9__

5,387,949

1

# EYEGLASS CONNECTION DEVICE

## BACKGROUND OF THE INVENTION

The present invention relates to a connector for connecting an eyeglass lens to an earstem. The connector enables the user to interchange different earstems with different lenses, thus creating different color or configuration combinations.

This invention can be used with any shape of lens or earstem that is designed to accept the connector. In addition, the connector of the present invention is useable with both dual lens and unitary lens eyeglass systems. The connector is easily attachable and removable from the top, side or bottom edge of the lens, yet provides a sturdy connection when locked into position.

Unitary lens eyeglasses having interchangeable lenses are known in the art. See, for example, U.S. Pat. Nos. 4,824,233 and 4,867,550, both to James H. Jannard. The upper frame in these prior devices generally comprises a bar extending across the top edge of the lens and connecting to both earstems.

In order to switch lenses, the top edge of the new lens typically has a complementary shape to a slot extending the length of the upper frame. Thus, the shape of the top edge of the lens was generally dictated by the unique shape of the frame.

Thus, there remains a need for a connector that allows for the quick and easy interchange of earstems or lenses that will be secure when in the locked position, but that minimizes the need for structural correspondence between the edge of the lens and the lens contacting portion of the frame, and which does not require a frame along the entire top edge of the lens.

## SUMMARY OF THE INVENTION

There has been provided, in accordance with one aspect of the present invention, an eyeglass connection device that connects the earstem to the lens, which enables the user to interchange the lens or earstem. There are two connectors in a standard eyeglass assembly, each connecting an earstem to the lens. Thus, one may change both earstems or either one of them.

The connector comprises a main body having a lateral end a medial end, and a lens receiving channel extending from the medial end in the direction of the lateral end. A first interlock structure is provided in the lateral end of the channel, and a second interlock structure is spaced apart from the lateral end of the channel.

Preferably, the first interlock structure comprises a locking surface for engaging a corresponding locking surface on a lens for resisting vertical upward motion of the lateral end of the connector with respect to the lens. The locking surface on the first interlock structure preferably comprises a ramped edge of a projection on the connector. The projection is preferably integrally molded on the connector, and extends within the channel in the medial direction.

The second interlock structure comprises a locking surface for releasably engaging a corresponding locking surface on the lens. Preferably, the second interlock structure comprises at least one projection within the channel for engaging a recess in the lens. More preferably, the second interlock structure comprises first and second projections on the connector extending towards each other from opposite sides of the channel for engaging opposing recesses in the lens. Alternatively, the second interlock structure comprises at least one recess

2

in the channel for receiving at least one projection on the lens.

In accordance with a further aspect of the present invention, there is provided a sunglass comprising a unitary transparent lens adapted to extend in a curved pane in the path of the wearer's left and right eye fields of vision, said lens having at least one connector extending along a portion of an edge of the lens, the connector having an elongated slot formed therein to removably receive a portion of the edge of the lens.

At least one projection is provided on the lens to interlock within a recess on the connector at a first end of the connector. A locking surface is provided on the connector, spaced apart from the recess, for releasably engaging a locking surface on the lens.

Preferably, the connector extends no more than about one-third of the way across the top edge of the lens. More preferably, the connector extends no more than about one-fifth of the way across the top of the lens. Alternatively, the connector extends along at least a portion of either the lateral edge of the lens or the bottom edge of the lens. In a further alternative, the connector connects to a flange or other extension of a frame for the lens.

In accordance with a further aspect of the present invention, there is provided a method of removably securing an earstem to a lens or frame in a pair of eyeglasses of the type having a right and left lens region, a nose piece and right and left earstems. The right and left lens regions are generally defined by a horizontal axis which extends from side to side throughout the left and right lens regions, and which is longer than a vertical axis which extends generally perpendicular to the horizontal axis.

The method comprises the steps of providing a frame or lens having a first and a second interlock structure thereon, and providing a connector having a slot therein for receiving the lens, said connector having a first and second complementary interlock structure thereon.

The connector is advanced along the horizontal axis until the first interlock structure of the connector is in contact with the first interlock structure on the lens. The second interlock structure on the connector is thereafter rotated downward, generally along the vertical axis, until the second interlock structure on the connector engages the second interlock structure on the lens.

In accordance with a further aspect of the present invention, there is provided a lens for assembly using the connectors of the present invention into an eyeglass of the type suitable for participation in active sports such as biking, skiing and the like.

The lens comprises a unitary pane having an upper edge and a lower edge, the lower edge having a nose piece opening formed therein for cooperating with the connectors and earstems to mount the lens on the nose of the wearer. The nose piece opening has an upper extremity, and the distance separating the upper extremity of the nose piece and the upper edge of the pane being defined as D1, and the distance separating the upper edge of the pane and the lower edge of the pane is defined as D2. D1 is in the range between about $\frac{1}{2}$ inch and 1-$\frac{3}{4}$ inches, and D2 is in the range of from about 1$\frac{1}{4}$ inches to about 2$\frac{3}{4}$ inches.

The lens has an arcuate cross-sectional configuration in a horizontal direction from a first lateral end to a

EXHIBIT 5 PAGE 5 OF 2

5,387,949

**3**

second lateral end, having an arc length within the range of from about 5-½ inches to about 7 inches.

At least one lateral interlock structure is provided in the upper lateral region of the lens, and at least one medial interlock structure is spaced apart from the lateral interlock structure by no more than about one-half of the arc length of the lens.

Further objects, features and advantages of the present invention will become apparent in the detailed description of the preferred embodiments which follows, when considered together with the attached figures and claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a front perspective view of a connection device of the present invention as part of an eyewear system;

FIG. 2 is a partial exploded view of the eyewear of FIG. 1, including a partial cut away view of a connection device;

FIG. 3 is a front elevational view of eyewear including connection devices of the present invention, with one connection device in partial cut away view; and

FIG. 4 is a cross-sectional view of a connection device of the present invention taken along line 4—4 of FIG. 3.

FIG. 5 is a front elevational view of a further embodiment of the present invention.

FIG. 6 is a front elevational view of a further embodiment of the present invention.

FIG. 7 is a partial elevational view of a frame closure lock in accordance with the present invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring to FIG. 1, there is disclosed in accordance with one aspect of the present invention a unitary lens 5 connected to earstems 20, 22 via connectors 15, 17 to form an eyeglass system 10.

The eyeglass system 10 may comprise either a dual lens system or a unitary lens system. Dual lens systems are well known in the art of prescription glasses, and include a separate right lens and left lens held in place in front of the range of vision of the wearer's right and left eyes by a conventional frame. See, e.g., FIG. 5.

The unitary lens systems utilize a single lens extending throughout both the wearer's left eye and right eye fields of vision. Unitary lenses having a variety of configurations which may be used in combination with the present invention are known in the art. For example, unitary lenses having a configuration which defines a portion of the surface of a cylinder are disclosed in U.S. Pat. No. 4,859,048 to James H. Jannard, which is incorporated herein by reference. Unitary lenses having a configuration which defines a portion of the surface of a toroid are disclosed in U.S. Pat. No. 4,867,550 to James H. Jannard, which is also incorporated herein by reference. In addition, unitary lenses having a configuration which defines a portion of the surface of a sphere, a frusto conical or other geometrical configuration can also be utilized in combination with the connectors of the present invention.

Since both connectors 15, 17 and both earstems 20, 22 are preferably mirror images, respectively, reference will be made to only one connector 15 and one earstem 20 herein. Referring to FIG. 1, connector 15 comprises a hinge end 55 and a lens receiving end 60.

**4**

In the illustrated embodiment, the connector 15 has a lens receiving channel 75 that starts from the lens receiving end 60 and extends through at least a part of the length of the connector 15. The channel 75 has a locking end 70 located at the lens receiving end 60 of the connector 15, and a pivot end 65. See FIG. 2. The terms "locking end" and "pivot end" are used only as descriptive terms for the functioning of the illustrated embodiment, and not as a limitation on the scope of the invention.

The length of the connector 15 and channel 75 can be varied depending upon the desired contact area between the connector 15 and the connector contacting surface 39 of lens 5. Typically, each connector will extend no more than about half way across the top of the lens 5 in a top mount embodiment. Preferably, each connector will extend no more than about a third of the way across lens 5 thereby leaving at least about a third of the upper lens edge exposed. More preferably, connector 15 will extend no more than about one fifth of the arc length of lens 5. Thus, in a lens having an arc length of about 6 inches, each connector contacting surface 39 will have a length within the range of from about ¾ inches to about 1-¼ inches.

Preferably, the medial end of the connector contacting surface 39 is defined by a ramp or shoulder 41 corresponding to the thickness of the back wall of the channel 75 so that the upper edge of the installed connector 15 and lens 5 form a generally smooth transition.

Alternatively, the connector 15 can readily be adapted to extend along the lateral edge or bottom edge of the lens 5. In these embodiments, the connector will be releasably retained on the lens by two or more cooperating locking surfaces, as will be discussed in connection with the top mount embodiment, infra.

The hinge end 55 of connector 15 is connected to the earstem 20 via a pin connection 25. In the illustrated embodiment, a flange 57 extends from the main body of the connector 15, and is provided with a pin or recess to cooperate with corresponding structure on the earstem for pivotally securing the earstem 20. The pin connection 25 allows the earstem 20 to be folded inward toward the lens 5 so that the eyeglass 10 will take a more compact shape.

In general, flange 57 is adapted for removable insertion between a pair of generally parallel extensions 58 and 59 on the hinge end of the earstem 20. See, e.g., FIG. 2. Flange 57 in the illustrated embodiment is provided with a pair of opposing pins extending in opposite directions therefrom. Each pin is received in a recess or bore in the corresponding extension 58 or 59. These components are preferably molded or formed from a plastic material that will permit the extensions 58 and 59 to be separated slightly to releasably snap over the pins on flange 57.

Alternatively, the relationships of these components can be reversed in a variety of ways. For example, pins can be provided extending towards each other from the opposing inside surfaces of the extensions 58 and 59 to be received by a bore in the flange 57. The pin connection 25 will not be further described since variations will be readily understood by one of skill in the art in view of the disclosure herein.

Referring to FIG. 2, the lens 5 is provided with a first locking structure such as tooth 35, spaced apart from a second locking structure such as indent 45. The tooth 35 defines a recess 36 on the bottom side thereof for receiv-

EXHIBIT ___5___ PAGE _6_ OF _9_

5,387,949

| 5 | 6 |

ing an interlocking structure such as extension 38 on the connector 15.

Although illustrated as an extension 38 on the connector 15 for engaging a recess 36 on the lens, any of a variety of complementary surface structures on the lens and connector will accomplish the inventive connection. In general, the first locking structure comprises a structure on the lens having a locking surface for resisting vertical upward movement of a corresponding locking surface on the connector 15. This may be accomplished by cooperating projections and indents having a variety of configurations, including interlocking "teeth" pins and recesses, beads and grooves and the like, as will become apparent to one of skill in the art in view of the present disclosure.

For example, the upper edge 39 of the connector receiving portion of the lens 5 can be provided with a plurality of bumps or projections extending generally transversely to the local plane of the lens. Alternatively, a continuous raised bead can extend along the edge 39 of the lens 5. In this embodiment, the inner surface of the channel 75 is provided with at least one recess for cooperating with the raised lens structure to provide a secure friction or interference fit. Installation can then be accomplished by sliding the lens axially into a slot on the connector having a "T" or functionally similar type cross section. Thus, the first and second locking structure can merge into a continuation of the same structure. The connector can additionally be permanently adhered to the lens such as by solvent based adhesives or heat; however, the two components remain removably secured in the preferred embodiment.

Referring to FIGS. 3 and 4, the second locking structure at medial end 70 of the channel 75 contains at least one interlocking structure such as projection 40. The projection 40 snaps into the indent 45 of the lens 5 when the connector 15 is locked into position.

There may be one indent 45 extending partially or completely through the lens, or two located on opposite sides of the lens 5. Indent 45 can take the form of a circular hole, elongate slot, shelf or shoulder formed beneath a ramp or otherwise, as long as a surface is provided for cooperating with the corresponding structure on lens 5 to produce a friction or interference fit.

Accordingly, there may be one projection 40 or there may be two or more located on opposing sides of the interior of the channel 75. The projection 40 can be of any shape generally as long as it has an interference fit with the corresponding locking structure on the lens, such as indent 45. The projection 40 can extend partway or even all the way along the length of the channel 75 in the form of a ridge, as has been discussed. In this embodiment, the first and second locking structures may be merged into a single elongate or repeating structure. The projection 40 is illustrated as located slightly above the bottom edge of the connector 15, but it can be located exactly on the bottom edge.

As will be apparent in view of the disclosure herein, the interlock structure on the lens cooperates with the corresponding interlock structure on the connector to produce an interference fit which resists both upward rotation of the connector about the tooth 35, and also lateral motion of the connector 15 with respect to the lens 5.

To attach the connector 15 to the lens 5, the tooth 35 of the lens 5 is advanced into the recess 30 of the connector 15 while the longitudinal axis of connector 15 is angled slightly above parallel to surface 39, so that the lens receiving end 60 is positioned above the connector receiving edge 39 of the lens 5. Once the tooth 35 is positioned in the recess 30, the lens receiving end 60 of the connector 15 can be pivoted down and snapped onto the top edge of the lens 5. The projection 40 of the connector 15 will advance into the indent 45 of the lens 5 to provide an interference fit. Removal is accomplished by the same steps in reverse. Removing the projection 40 from the indent 45 is accomplished by plastic deformation of the material utilized in making the connector 15 as the lens receiving end 60 is rotated upward about the tooth 35.

The order of attachment of the first and second locking structures will depend upon the particular embodiment. For example, if the medial locking structure comprises a projection and recess which are roughly mirror images of the lateral locking structure, either the medial or the lateral end of the connector can be set first.

The connector 15 is preferably molded as an integral unit from any of a variety of plastics conventionally used for detachable component sunglass frames. Alternatively, the slot 75 can be milled as a post molding step. In a unitary lens embodiment, the lens is preferably injection molded from polycarbonate or other conventional material and cut or ground to produce the appropriate profile.

Since the connector 15 is attached to the lens 5 at only a relatively small portion of the top, side or bottom edge of lens 5, the shape of the top edge of the lens may be varied without regard to the shape of an upper frame. This can be advantageous in a variety of circumstances, such as for uses in which it is desirable to minimize obstacles to the range of vision at the upper portion of the lens.

For example, bicyclists tend to look through the uppermost portion of the lens and can be distracted or limited by an upper frame. In addition, the range of vision for each eye at the top of the field of vision does not necessarily follow a uniform curve having a continuous single radius. Thus, positioning a single arcuate upper frame sufficiently high that it optimizes the field of view can result in the use of unnecessary lens and frame material in regions where it extends beyond the upper range of vision.

By eliminating the need for a full upper frame, the present invention permits contouring of the upper edge of the lens in a manner that minimizes weight while maximizing protection of the wearer's full field of vision, and at the same time retaining all of the advantages of rapid interchangeability of components without the use of tools.

Referring to FIG. 5, there is disclosed a further embodiment in accordance with the present invention. A wire frame pair of eyeglasses 80 is disclosed, having a right lens 82 and a left lens 84 disposed in a wire frame 86. In a preferred embodiment, lenses 82 and 84 are removably disposed in the frame 86 to permit selective interchanging of lenses, as will be discussed.

Wire frame 86 is provided with a right mounting flange 89 and left mounting flange 91 for receiving connectors 88 and 90, respectively. Preferably, connectors 88 and 90 are removably secured to flanges 89 and 91, in the same manner as has been discussed in connection with FIGS. 1-4, supra.

Flanges 89 and 91 may be constructed of any of a variety of materials having sufficient structural strength to accomplish the intended function. However, in a preferred embodiment, the flanges 89 and 91 comprise a

EXHIBIT 5   PAGE 7 OF 9

5,387,949

7                                                            8

metal which is bondable to the metal used for the construction of the frame 86. A wide variety of metals are known in the art which may be utilized for the present purposes, including titanium, aluminum, nickel silver alloys, stainless steel, brass and various non-metal composites. These metals or other materials may be drawn into wire, or stamped from sheet stock, or otherwise molded or formed to create a frame 86 which may then be secured such as by soldering or brazing to flanges 89 and 91, which are preferably stamped from sheet stock, and thereafter provided with any desired curvature.

Preferably, the wire frame glasses 80 are provided with a nose piece 92 having a slot 94 extending along the upper surface thereof to receive a nose piece connector wire or flange 96. The nose piece connector wire 96 is preferably secured to the remainder of frame 86 by conventional brazing or soldering techniques. The foregoing construction permits the user interchangeability of nose pieces onto the wire frame 86, with the nose piece releasably retained in position by friction or interference fit structures, as will be apparent to one of skill in the art.

In accordance with a further embodiment of the detachable component wire frame glasses 80 of the present invention, there is provided a means for removably retaining the lenses 82 and 84 within the wire frame 86. Referring to FIG. 6, there is disclosed a lens 84 mounted in a frame 86 which has been provided with a frame closure lock 98. Closure lock 98 may be provided at any location along the perimeter of lens 84, such as on the lateral end as illustrated, on a medial surface, or at the connection point between the frame 86 and the flange 91.

The closure lock 98 in the embodiment illustrated in FIG. 6 comprises a threaded barrel 100 secured to the frame 86. Threaded barrel 100 is axially aligned with a tubular sleeve 102 secured to an adjacent portion of frame 86. A discontinuity or space 103 is provided in the frame 86 between the threaded barrel 100 and sleeve 102, as will be understood by one of skill in the art.

A screw 104 extends axially through the sleeve 102 and into the threaded barrel 100. Tightening or loosening screw 104 will draw adjacent ends 106 and 108 of frame 86 towards each other or away from each other, thereby reducing or enlarging the circumference of the frame 86 which encircles lens 84.

In this manner, the circumference of frame 86 can be enlarged to release the lens 84 so that it may be interchanged with another lens having different refractive properties or different color densities or other design configurations.

A variety of alternative embodiments based upon the axially aligned barrel embodiment are contemplated herein. For example, the sleeve 102 or a flange need only have a sufficient axial length to support the screw 104. The screw 104 may be a conventional threaded machine screw, or may be a modified rod having one or more radially outwardly extending projections or a medical luer lock configuration.

A rod having a "T" shaped distal end can be inserted into a keyway in the opposing barrel, and rotation of the rod through an angle, e.g., of about 90° will move the "T" structure out of alignment with the keyway to prevent retraction of the rod. In general, any locking structure which involves a rod or pin which is rotatable from a first, aligned position to permit axial insertion into a keyway, and a second, nonaligned position to prevent retraction from the keyway will work.

In any of the foregoing "barrel" embodiments of the closure lock, the closure lock structure can be located at any convenient point around the periphery of the lens. Preferably, the closure lock will be disposed on the posterior side of the flange 91.

Referring to FIG. 7, there is disclosed another embodiment of the frame closure lock in accordance with the present invention. In this embodiment, the frame is severed to provide two abutting ends 110 and 112 having a space therebetween. Each of ends 110 and 112 is provided with an outwardly extending projection 114 and 116, respectively. Once a lens 84 has been disposed within the wire frame 86, the ends 110 and 112 are manually drawn towards each other, and a retention clip 118 may be snapped over the projections 114 and 116 to retain the frame 86 in its reduced circumference configuration, thereby retaining the lens.

For this purpose, the contact surfaces between the abutment 114, 116 and the clip 118 are preferably configured in a manner that provides an interference fit to retain the clip 118 in place until the resilience of the clip 118 is overcome, such as by prying with a fingernail or removal tool. The contact surfaces between the clip 118 and abutments 114 and 116 will therefore be angled and toleranced in a manner that provides a sufficient resistance to removal of clip 118 that it will not be likely to come unconnected during normal use. Clip 118 may be constructed from metal, or from any of a wide variety of polymeric materials which are known in the sunglass manufacturing art.

In a variation of the foregoing, the nose piece, nosepiece connector 96 or flange 91 may be configured to function as clip 118, thereby permitting interchangeability of the lens by removing an eyeglass component. For example, one end 106 of frame 86 can be bonded to flange 91, and the space 103 provided in the frame at a point adjacent the connection to flange 91. The other end 108 can then be removably secured to the flange to accomplish the interchangeability of lenses.

The lens 84 and frame 86 may be provided with any of a variety of interlock structures which will become apparent to one of skill in the art in view of the disclosure herein. For example, the outer periphery of lens 84 in one embodiment is provided with a radially inwardly extending channel extending all the way around for receiving a wire frame 86 therein. Tightening of the frame closure lock 98 reduces the circumference of the wire 86 so that it rests in the channel formed around the circumference of the lens 84. In an alternate embodiment, the lens 84 is provided with a radially outwardly extending flange having the same or a reduced thickness compared to the remainder of the lens. The flange is received within a groove provided around the inside surface of the wire frame 86 to provide an interlock fit.

Thus, there has been provided in accordance with this aspect of the present invention a detachable component system having interchangeable left and right lenses, an interchangeable nose piece and interchangeable connectors for providing hinged support to a pair of removably secured earstems. Although described as a wire frame eyeglass 80, it is to be understood that the wire 86 can readily be replaced by stamped or rolled metal sheet stock or extruded or molded polymeric materials, which extend outwardly from the contact surface with the lens as far as is practical for a given purpose. For example, in an embodiment intended for use as protective eyewear, the frame 86 preferably extends a relatively large distance from side to side and

EXHIBIT 5 PAGE 8 OF 9

5,387,949

9

from top to bottom to create a "mask" of metal or plastic which will provide sufficient eye protection for the intended application. In this manner, protective prescription lens eyewear may be provided for a wide variety of uses, ranging from surgery, welding, bicycle racing and others.

Although this invention has been described in terms of certain preferred embodiments, other embodiments that are apparent to those of ordinary skill in the art are also within the scope of this invention. Accordingly, the scope of this invention is intended to be limited only by the appended claims.

What is claimed is:

1. A connector for eyeglasses, for connecting one or more earstems to a lens, said connector comprising:
   a main body with a lateral end and a medial end;
   a lens receiving channel extending from the medial end in the direction of the lateral end;
   a first interlock structure in the lateral end of the channel, said first interlock structure comprising a locking surface for engaging a corresponding locking surface on the lens for resisting vertical upward motion of the lateral end of the connector with respect to the lens, said locking surface on the first interlock structure comprising a ramped edge of a projection on the connector; and
   a second interlock structure spaced apart from the lateral end of the channel.

2. A connector for eyeglasses as in claim 1, wherein the projection is integrally molded on the connector and extends within the channel in the medial direction.

3. A connector for eyeglasses as in claim 1, wherein the second interlock structure comprises a locking surface for releasably engaging a corresponding locking surface on the lens.

4. A connector for eyeglasses as in claim 1, wherein the second interlock structure comprises a projection within the channel for engaging a recess in the lens.

5. A connector for eyeglasses as in claim 4, wherein the second interlock structure comprises first and second projections on the connector extending toward each other from opposite sides of the channel.

6. An eyeglass, comprising a lens, an earstem, and at least one connector as defined in claim 1 for removably connecting the earstem to the lens.

7. A eyeglass as in claim 6, further comprising an earstem pivotally secured to the connector.

8. An eyeglass, comprising a lens, an earstem, and at least one connector as defined in claim 1 for removably connecting the earstem to the lens.

9. Sunglasses, comprising:

10

a unitary transparent lens adapted to extend in the path of the wearer's left and right eye fields of vision; and
at least one connector as defined in claim 1 extending along a portion of an edge of said lens, said lens having at least one projection on the lens to interlock with said connector.

10. A sunglass as in claim 9, further comprising a second connector secured to said lens.

11. A sunglass as in claim 9, further comprising an earstem pivotally secured to said connector.

12. A sunglass as in claim 9, wherein said connector extends no more than about one-third of the way across a top edge of the lens.

13. A sunglass as in claim 9, wherein the connector extends no more than about one-fifth of the way across the top edge of the lens.

14. A sunglass as in claim 9, wherein said connector extends along at least a portion of the lateral edge of the lens.

15. A sunglass as in claim 9, wherein said connector extends along at least a portion of the bottom edge of the lens.

16. The connector of claim 1, further comprising an earstem pivotally secured to the connector.

17. A connector for eyeglasses, for connecting one or more earstems to a lens, said connector comprising:
   a main body with a lateral end and a medial end;
   a lens receiving channel extending from the medial end in the direction of the lateral end;
   a first interlock structure in the lateral end of the channel; and
   a second interlock structure spaced apart from the lateral end of the channel, said second interlock structure comprising a recess in the channel for receiving a projection on the lens.

18. An eyeglass, comprising:
   a lens, said lens having a connector contacting surface having a projection at a lateral point thereon and a recess at a medial point thereon;
   an earstem; and
   at least one connector for connecting one or more earstems to a lens, said connector comprising a main body with a lateral end and a medial end; a lens receiving channel extending from the medial end in the direction of the lateral end; a first interlock structure in the lateral end of the channel; and a second interlock structure spaced apart from the lateral end of the channel, said connector for removably connecting the earstem to the lens.

* * * * *

EXHIBIT 5 PAGE 9 OF 9

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36, and 38

**United States Patent and Trademark Office**

Reg. No. 3,160,138
Registered Oct. 17, 2006

## TRADEMARK
### PRINCIPAL REGISTER



FOX RACING, INC. (CALIFORNIA CORPORA-TION)
LEGAL AFFAIRS
18400 SUTTER BOULEVARD
MORGAN HILL, CA 95037

FOR: PROTECTIVE EYEWEAR, NAMELY SPEC-TACLES, PRESCRIPTION EYEWEAR, ANTI-GLARE GLASSES, SUNGLASSES, AND MOTORCYCLING GOGGLES AND THEIR PARTS AND ACCESSOR-IES, NAMELY REPLACEMENT LENSES, FRAMES, EARSTEMS, AND NOSE PIECES; CASES SPECIAL-LY ADAPTED FOR SPECTACLES AND SUNGLAS-SES AND THEIR PARTS AND ACCESSORIES, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-1-2005; IN COMMERCE 1-1-2005.

OWNER OF U.S. REG. NO. 2,232,648.

SN 78-471,337, FILED 8-20-2004.

MATTHEW PAPPAS, EXAMINING ATTORNEY

EXHIBIT ____6____ PAGE __1__ OF __1__

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Oakley, Inc., a Washington corporation

## DEFENDANTS

BIG 5 CORPORATION, a Delaware corporation and STYLE EYES OPTICS, a California corporation

**(b)** County of Residence of First Listed Plaintiff **Orange County, CA**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Los Angeles County, CA**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Weeks, Kaufman, Nelson & Johnson, 462 Stevens Ave., #310, Solana Beach, CA 92075 (858) 794-2140

Attorneys (If Known)

'08 CV 1457 JAH JMA

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. section 271 and 281

Brief description of cause:
This is a case for patent infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE see Notice of Related Cases DOCKET NUMBER

DATE 8/8/08

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 153897   AMOUNT $350   APPLYING IFP   JUDGE   MAG. JUDGE

TAC 4/11/08

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 153897   — TC

## August 11, 2008
## 16:05:55

## Civ Fil Non-Pris
USAO #.: 08CV1457
Judge..: JOHN A HOUSTON
Amount.:                    $350.00 CK
Check#.: BC2230

**Total-> $350.00**

FROM: OAKLEY, INC.
          VS
          BIG 5 CORP.